<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| RABBI DR. ABRAHAM UNGER, PH.D., | |
| Plaintiff, | Civil Action No. 14-4074 (ES) (MAH) |
| v. | OPINION AND ORDER |
| JUDGE MAUREEN P. SOGLUIZZO, P.J.F.P., et al., | |
| Defendants. | |

**SALAS, DISTRICT JUDGE**

**I.     INTRODUCTION**

This action arises from Plaintiff Rabbi Dr. Abraham Unger, Ph.D.'s (Plaintiff) allegations that Defendants Judge Maureen P. Sogluizzo, P.J.F.P., Daniel Pacilio, Chief Justice Stuart Rabner, Meryl G. Nadler, and Judge Glenn A. Grant, J.A.D. (collectively, Defendants) violated and conspired to violate his civil rights.  Before the Court is Defendants' motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (D.E. No. 8).  The Court has considered the parties' submissions and resolves Defendants' motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b).  For the reasons below, the Defendants' motion to dismiss is GRANTED.

**II.    FACTUAL & PROCEDURAL BACKGROUND**

Plaintiff and his former wife filed a divorce proceeding on March 17, 2011 in Hudson County, New Jersey.  (D.E. No. 3 ("Am. Compl.") ¶ 4).  The case was assigned to Judge Sogluizzo,

and consequently to her law clerk, Pacilio. (*Id.* ¶¶ 4, 14). The case was ongoing at the time that Plaintiff filed his Amended Complaint. (*Id.* ¶ 7).

Plaintiff alleges that, throughout his divorce proceedings, Judge Sogluizzo deprived Plaintiff of his civil liberties pursuant to § 1983, (*id.* ¶¶ 29-38), and that Defendants jointly engaged in a civil rights conspiracy against him, (*id.* ¶¶ 39-44). To support his claims, Plaintiff makes various allegations regarding his family court proceedings, including the following:[1]

First, Plaintiff alleges that during his first session with the court-appointed mediator, the mediator expressed recognition of Plaintiff's former wife's law firm, but not Plaintiff's attorney. (*Id.* ¶ 5). Also during that session, after Plaintiff refused to accept his former wife's custody and parenting time proposal in full, Plaintiff alleges that the mediator "angrily rose from the conference table at which [they] were meeting and said, 'I have the ear of the Judge.'" (*Id.*).

Plaintiff further alleges that Judge Sogluizzo "seemed aggressive" with Plaintiff during a July 27, 2012 hearing. (*Id.* ¶ 8). Specifically, he alleges that Judge Sogluizzo said she "took umbrage" when Plaintiff's then-attorney "raised the issue of gender bias" against Plaintiff. (*Id.*). In addition, he alleges that Judge Sogluizzo "indignantly demanded [that Plaintiff] pay for the mother's legal fees in full for the motion *after* the issue of gender was raised." (*Id.*).

Plaintiff further alleges that, on January 23, 2013, Judge Sogluizzo ruled that additional discovery regarding Plaintiff's former wife's mental health was unnecessary, and that his former wife was "singly protected by the Court from submitting her complete psychiatric and medical history, even though, especially in parenting matters, these items are typically relevant to best interests of children." (*Id.* ¶ 9).

---

[1] The Court recounts Plaintiff's allegations in the order that they appear in his Amended Complaint, which is not necessarily chronological.

Plaintiff further alleges that, during a May 22, 2013 hearing, Judge Sogluizzo stated that Plaintiff was "principled" and "indicated that she didn't appreciate principle." (*Id.* ¶ 10). He alleges that, at that same hearing, Judge Sogluizzo permitted Plaintiff's former wife to introduce certain testimony over Plaintiff's objection that it constituted "double hearsay." (*Id.*). He also alleges that Judge Sogluizzo "admonished" him at that hearing. (*Id.*).

Plaintiff further alleges that Judge Sogluizzo refused to recuse herself after Plaintiff orally moved for recusal on January 16, 2014. (*Id.* ¶ 11). He also alleges that, during trial, Judge Sogluizzo did not permit Plaintiff's expert and other witnesses to testify, however his former wife's expert was permitted to testify for a full day. (*Id.* ¶ 12).

Plaintiff further alleges that, "[m]ost egregiously, on October 8, 2013, Judge Sogluizzo entered an Order, with no motion pending and during an adjournment in trial, that stated that the mother was the custodial parent, and me, the father, the non-custodial parent." (*Id.* ¶ 14). Plaintiff alleges that he called Chambers to inquire about the order and spoke with Pacilio. (*Id.*). He alleges that Pacilio informed Plaintiff that the Order was a "formality." (*Id.*). After contacting various family court administrators, Plaintiff obtained an amended order, however he alleges that "the damage done . . . has been difficult." (*Id.*).

Finally, Plaintiff alleges that he encountered various administrative errors during his family court proceeding. For example, he alleges that he improperly received a "Notice of Motion" even though there was no motion pending. (*Id.* ¶ 15). In addition, he alleges that, after trial concluded, there was an exhibit missing from his evidence box. (*Id.* ¶ 16). He further alleges that Pacilio refused to give Plaintiff a receipt when Plaintiff handed in his final written summations, (*id.* ¶ 17), and that he received incomplete and mixed information regarding court dates, (*id.* ¶¶ 18-19, 22, 23). Lastly, he alleges that when he requested a copy of Orders issued by Judge Sogluizzo over

3

the past ten years, he received no response. (*Id.* ¶ 20). Plaintiff alleges that he initially requested the orders via letter to Nadler, Counsel to the New Jersey Administrative Office of the Courts, on May 19, 2014, and that he followed up by letter to Chief Justice Rabner on June 16, 2014. (*Id.*).

Plaintiff filed his initial complaint on June 25, 2014, (D.E. No. 1, ("Compl.")), and his Amended Complaint on July 9, 2014. (Am. Compl.). Plaintiff's stated causes of action appear to be: (1) a claim under 42 U.S.C. § 1983 for Fourteenth Amendment violations against Judge Sogluizzo, and (2) a civil rights conspiracy claim. Plaintiff does not specify which individuals he asserts his conspiracy claim against. However, the Court construes it to be pled against all Defendants.[2]

On August 4, 2014, Plaintiff requested default judgment against Judge Sogluizzo. (D.E. No. 6, Request for Default). The Clerk of the Court entered default judgment on August 5, 2014. (August 5, 2014 Entry of Default as to Defendant, Marueen P. Sogluizzo). On August 15, 2014, Judge Sogluizzo moved to vacate the entry of default and Defendants moved to dismiss. (D.E. No. 7, Motion to Vacate Clerk's Entry of Default; D.E. No. 8-1, Brief in Support of Defendant's Motion to Dismiss ("Def. Mov. Br.")). Unger opposed Defendant's motion to dismiss on September 29, 2014. (D.E. No. 15, Response in Opposition to Defendant's Motion to Dismiss ("Pl. Opp. Br.")). On March 11, 2015, Magistrate Judge Michael Hammer granted Judge Sogluizzo's motion to vacate the entry of default judgment. (D.E. No. 22). Defendants' motion to dismiss is now ripe for the Court's determination as to all Defendants.

---

[2] Plaintiff pleads his conspiracy claim under 42 U.S.C. § 1983, but his allegations and case citations indicate that he intends to bring this claim under 42 U.S.C. § 1985(3). (Am Compl. ¶ 39).

### III.     LEGAL STANDARD

####     A.  Federal Rule of Civil Procedure 12(b)(6)

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"When reviewing a motion to dismiss, '[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom.'" *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). But the court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

####     B.  Federal Rule of Civil Procedure 12(b)(1)

Motions to dismiss for lack of subject matter jurisdiction may be raised either as a facial challenge to "the existence of subject matter jurisdiction in fact, quite apart from any pleadings,"

or as a factual challenge where "the court must consider the allegations of the complaint as true." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

When a court considers a facial challenge, the court "assumes that the allegations in the complaint are true, and may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction." *Johnson v. Passaic Cnty.*, No. 13-4363, 2014 WL 2203842, at *3 (D.N.J. May 23, 2014) (citing *Cardio-Med. Assoc., Ltd. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983); and *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999)).

## IV.   DISCUSSION[3]

### A. Plaintiff's Claims Against Judge Sogluizzo

Plaintiff appears to assert claims against Judge Sogluizzo for depriving him of due process and equal protection under 42 U.S.C. § 1983 and for engaging in a civil rights conspiracy. (Am. Compl. ¶¶ 29-44). Plaintiff's Amended Complaint does not specify whether he seeks damages in addition to injunctive relief. However, in an abundance of caution and in light of Plaintiff's *pro se* status, the Court will construe Plaintiff's claims as seeking both. The Court will discuss each in turn.

   i.   *Judicial Immunity from Suits for Damages*

"[J]udges defending against § 1983 actions enjoy absolute immunity from damages liability for acts performed in their judicial capacities." *Supreme Court of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 734-35 (1980) (citing *Pierson v. Ray*, 386 U.S. 547 (1967)); *see*

---

[3] Defendants argue that Plaintiff's Amended Complaint should be dismissed on the basis of *Rooker-Feldman* abstention doctrine, (Def. Mov. Br. at 6), the domestic relations exception, (*id.* at 8), Eleventh Amendment sovereign immunity, (*id.* at 11), judicial immunity, (*id.* at 12), and for failure to state a claim for which relief can be granted, (*id.* at 15). Because the Court decides this motion on limited grounds, it need not reach the merits of Defendants' arguments regarding the *Rooker-Feldman* doctrine, the domestic relations exception, or Eleventh Amendment sovereign immunity.

*also Dennis v. Sparks*, 449 U.S. 24, 27 (1980). That immunity also "exists where it is alleged that the judge is acting as part of a conspiracy." *Rush v. Wiseman*, No. 09-4385, 2010 WL 1705299, at *8 (E.D. Pa. Apr. 27, 2010) (citing *Dennis*, 449 U.S. at 27).

The case law is clear that judicial immunity "is overcome in only two sets of circumstances." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). First, a judge is not immune to "liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 11-12 (citing *Forrester v. White*, 484 U.S. 219, 227-29 (1988); *Stump v. Sparkman*, 435 U.S. 349, 356-60 (1978)). Whether an act is judicial or nonjudicial "is to be determined by its character, and not by the character of the agent." *Forrester*, 484 U.S. at 228 (quoting *Ex parte Virginia*, 100 U.S. 339, 348 (1880).

Here, Plaintiff's allegations against Judge Sogluizzo arise from actions she took as the presiding judge in Plaintiff's divorce proceedings. (*See generally* Am. Compl.). Specifically, Plaintiff alleges civil rights violations resulting from Judge Sogluizzo's judicial orders and rulings, including her decisions regarding discovery, the need for expert testimony, and the admissibility of certain evidence. (*Id.* ¶¶ 5, 9-13, 15, 16, 18, 22, 23). Despite Plaintiff's characterizations of these actions as administrative or non-adjudicative, (Pl. Opp. Br. at 9), they cut to the heart of judicial decisionmaking and discretion. (*See* Am. Compl. ¶¶ 6, 7, 14). Thus, Judge Sogluizzo was clearly acting within her judicial capacity.

Unger's argument that Judge Sogluizzo acted in the absence of all jurisdiction is similarly unavailing. As far as the Court can glean from Plaintiff's brief, his sole contention in support of this argument is that Judge Sogluizzo violated the canons of judicial ethics by failing to report that Plaintiff's former wife violated the Food, Drug, and Cosmetic Act when she testified that she used

7

a prescription drug that she brought from Argentina. (*Id*. ¶ 13; Pl. Opp. Br at 9). Unger does not explain how this constitutes an act in "absence of all jurisdiction," and the Court fails to see how that act rises to this level. Even if Judge Sogluizzo *should* have reported Plaintiff's former wife's violation, her failure to do so does not strip her of immunity.[4] "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted 'in the clear absence of all jurisdiction.'" *Capogrosso v. The Supreme Court of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009) (quoting *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006)). As a family court judge presiding over a divorce proceeding, the Court concludes that Judge Sogluizzo was acting well within her jurisdiction.

      ii.     *Judicial Immunity from Suits for Equitable Relief*

In certain circumstances, a cause of action for injunctive relief may be asserted against federal officers or the federal government. *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949). "However, immunity principles still apply, and, except in very limited circumstances, federal judges are immune from suits for injunctive relief." *Rush*, 2010 WL 1705299 at *10. In 1996, Congress amended 42 U.S.C. § 1983 to provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *see also Azubuko*, 443 F.3d at 304. Plaintiff has not alleged that a declaratory decree was violated or that declaratory relief is unavailable. Moreover, the injunctive relief sought addresses actions taken by Judge Sogluizzo in a judicial capacity. Thus,

---

[4] Moreover, is not clear from the facts that Plaintiff's wife's actions constitute a "violation of law," as Congress has waived enforcement authority over importation of prescription drugs by individuals in circumstances such as those stated in the Amended Complaint. *See* 21 U.S.C. § 384(j)(1).

8

to the extent that Plaintiff requests an injunction against Judge Sogluizzo, the requested relief is unavailable for this reason as well.

In sum, Judge Sogluizzo is entitled to absolute immunity from suits for damages and injunctive relief. *See Mierzwa*, 282 F. App'x. at 977. [5]

### B. Plaintiff's Claims Against Daniel Pacilio, Esq.

Plaintiff appears to assert a civil rights conspiracy claim against Pacilio. (Am. Compl. ¶ 39). The Complaint does not specify the relief that Plaintiff seeks against Pacilio, but, in an abundance of caution and in light of Plaintiff's *pro se* status, the Court will again construe the Complaint as seeking both damages and injunctive relief. (*Id*. ¶¶ 39-44).

Judicial clerks are entitled to quasi-judicial immunity when "their judgments are 'functionally comparable' to those of judges—that is, because they, too, 'exercise a discretionary judgment' as a part of their function." *Antoine v. Byers & Anderson*, 508 U.S. 429, 436 (1993) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 423 n.20 (1976)). "Under this 'functional' approach, courts must look to the nature of the function performed and not to the identity of the actor performing it, to determine if immunity is appropriate." *Alfred v. New Jersey*, No. 13-0332, 2013 WL 4675536, at *8 (D.N.J. Aug. 29, 2013) (citing *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993); and *Keystone Redevelopment Partners, LLC v. Decker,* 631 F.3d 89, 103 (3d Cir. 2011)). Immunity to those who perform "quasi-judicial" functions extends both to suits for damages and those for injunctive relief. *Jarvis v. D'Andrea*, No. 14-1492, 2014 WL 4251605, at *9 (M.D. Pa.

---

[5] Even if judicial immunity did not bar Plaintiff's claims against Judge Sogluizzo, the Court would be compelled to dismiss these claims for failing to meet the pleading standards of Federal Rule of Civil Procedure 12(b)(6). Under the standards of *Iqbal* and *Twombly*, the facts alleged in the Amended Complaint do not rise to the level of creating a plausible claim that Plaintiff's constitutional rights were violated by Judge Sogluizzo, that Judge Sogluizzo was involved in a conspiracy to violate those rights, or that Judge Sogluizzo's acts create a plausible claim under any theory that this Court can identify. (Am. Compl. ¶¶ 5, 9-13, 15, 16, 18, 22, 23); *Malleus* 641 F.3d at 563; *see also Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

Aug. 27, 2014) (holding former Clerk of the Court was "entitled to quasi-judicial immunity with respect to Plaintiff's claims for injunctive relief"); *see also Williams v. Barkman*, No. 13-1805, 2014 WL 1315992, at *5-6 (W.D. Pa. March 31, 2014).

Unger's Amended Complaint contains the following allegations regarding Defendant Pacilio: (1) he told Unger to submit a letter motion to the court in order to correct an Order, (Am. Compl. ¶ 14); (2) he refused to personally give Unger a receipt when he turned in his final written summations, (*id.* ¶ 17); (3) he told Unger over the phone that Judge Sogluizzo had not received certified mail from Unger, (*id.* ¶ 21); and (4) he rescheduled a control date over the phone with Unger, (*id.* ¶ 22).

Pacilio is entitled to partial judicial immunity because his alleged actions are functionally comparable to judicial acts. Specifically, Pacilio exercised the case management function of the court by permitting Unger to submit a letter motion in opposition to the Order. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) ("Certain implied powers must necessarily result to the courts of justice from the nature of their institution, powers which cannot be dispensed with in a court, because they are necessary to the exercise of all others."); *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962) ("[C]ontrol [is] necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."). In addition, Pacilio engaged in non-administrative conduct by deferring to a secretary to issue a receipt, (*id.* ¶ 17), and again exercised the case management function of the court by rescheduling the control date of the case, (*id.* ¶ 22). Because acts allegedly committed by Pacilio are judicial acts, Pacilio is entitled to judicial immunity for claims arising from those acts. *See Antoine*, 508 U.S. at 436.

Plaintiff's last allegation against Pacilio is that he informed Plaintiff that the court had not received his certified mail submission. (Am. Compl. ¶ 21). The Court treats this act as non-

10

judicial for the purpose of this motion, but concludes that the allegation does not state a cause of action for civil rights conspiracy. To properly allege a civil rights conspiracy under 42 U.S.C. § 1985(3), Plaintiff must allege the existence of "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Kirkland v. Dileo*, 581 F. App'x. 111, 118 (3d Cir. 2014) (quoting *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006)). Plaintiff has failed to allege facts sufficient to support any of the elements listed above. (*See generally* Am. Compl.). While the Court is required to give Plaintiff's allegations "every favorable inference to be drawn therefrom," Plaintiff has failed to provide the Court sufficient allegations for finding a cognizable claim. *Malleus*, 641 F.3d at 563; *see also Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Even when combined with Pacilio's judicial acts and the acts of the other Defendants, Plaintiff's allegations do not provide grounds for finding his conspiracy claim against Pacilio plausible. There is not even an allegation that a conspiracy occurred. Pacilio is therefore entitled to dismissal of the claims against him due to judicial immunity and Plaintiff's failure to state a claim of civil rights conspiracy.

### C. Plaintiff's Claims Against Chief Justice Rabner, Nadler, and Judge Grant

The Court construes the Amended Complaint to state a conspiracy claim against the remaining Defendants. (Am. Compl. ¶ 39). Unger's only allegation against Chief Justice Rabner states that he failed to reply to Plaintiff's June 16, 2014 letter. (*Id*. ¶ 20). His only allegation against Nadler, Counsel to the New Jersey Administrative Office of the Courts, is that she failed to provide Plaintiff with Judge Sogluizzo's matrimonial decisions from the past ten years within a

month of Plaintiff's request. (*Id.*). Plaintiff does not allege any facts about Judge Grant in his Amended Complaint.

On these allegations, there is no cognizable basis for the 42 U.S.C. §1985(3) civil rights conspiracy claims against Chief Justice Rabner, Judge Grant, and Nadler, and therefore they must be dismissed pursuant to 12(b)(6). As mentioned above, to state a claim for a civil rights conspiracy, a plaintiff must plead facts sufficient to show that each defendant (1) was part of any conspiracy, (2) had the requisite intent, (3) committed an act in furtherance of a conspiracy, and (4) that the act was a means through which plaintiff was injured. *Kirkland*, 581 F. App'x. at 118. Plaintiff has not alleged any facts for any of these Defendants supporting these elements.[6] The Third Circuit has made clear "that allegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action. A conspiracy cannot be found from allegations of judicial error, ex parte communications (the manner of occurrence and substance of which are not alleged) or adverse rulings absent specific facts demonstrating an agreement to commit the alleged improper actions." *Capogrosso*, 588 F.3d at 185. Because the allegations against these defendants all fail to provide a factual basis for any commitment to the alleged improper actions, Plaintiff has not "state[d] a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Chief Judge Rabner, Judge Grant, and Nadler

---

[6] The Court notes that Plaintiff's opposition brief, (D.E. No. 15), contains a number of exhibits that Plaintiff argues support his conspiracy claims. (*See* Pl. Opp. Br. at 4-9). However, "[u]nless the court converts a motion to dismiss into a motion for summary judgment, it is generally confined to the four corners of the complaint when evaluating its sufficiency." *Tri3 Enters., LLC v. Aetna, Inc.*, 535 F. App'x 192, 195 (3d Cir. 2013). Accordingly, "[i]t must accept all facts alleged as true and, apart from narrow circumstances . . . cannot rely on outside evidence the parties may introduce." *Id.* (citing *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010)). The Court will therefore not address the exhibits introduced by Plaintiff in support of his motion, and will focus on the allegations contained in the Complaint.

are therefore entitled to dismissal of the claims against them due to Plaintiff's failure to state a claim.

### D. Plaintiff's Demand for Injunctive Relief

For the reasons described above, Plaintiff's claims against all defendants must be dismissed due to either judicial immunity or failure to state a claim on which relief can be granted. However, it is also worth noting that the specific relief Plaintiff seeks is unavailable to him.

Plaintiff's stated demand for relief seeks (1) a request for an "immediate injunction to stay the decision of the state judge in her individual capacity pursuant to sec. 1983"; and (2) alternatively, an "immediate injunction to stay the decision of the state-court proceedings pursuant to the AIA, AWA, and sec. 1983." (Am. Compl. at Demand for Relief). Plaintiff clarified in his brief that he "solely sought in his prayer for injunctive relief a stay on prospective final State Court decision at the time of his U.S. District pleading" and that the final state court decision "was not rendered at the time of filing both the original June 25, 2014 complaint and the amended July 9, 2014 complaint, nor upon service of the Defendants on July 11, 2014." (Pl. Opp. Br. at 3). Though Plaintiff's Amended Complaint and brief do not make clear what he means by a "stay" on a decision, the Court construes this language to mean that Plaintiff seeks a stay of the proceedings.

The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a state court." 28 U.S.C. § 2283; *see also Nken v. Holder*, 556 U.S. 418, 442 (2009) (Alito, J., dissenting). Exceptions to the Anti-Injunction Act apply when "expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "If an injunction falls within one of these three exceptions, the All-Writs Act provides the positive authority for federal courts to issue injunctions of state court proceedings." *In re Gen'l Motors Corp. Pick-Up Truck Fuel Tank Products Liability*

*Litig.*, 134 F.3d 133, 143 (3d Cir. 1998).  Under the All-Writs Act, "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their jurisdiction and agreeable to the usages and principles of law."  28 U.S.C. § 1651.  Plaintiff has not pled any applicable exception in this case, and therefore the Court cannot grant the injunctive relief that Plaintiff seeks.

## VI. CONCLUSION

For the reasons above, Defendants' motion to dismiss is GRANTED *with prejudice* as to Defendants Judge Sogluizzo and Daniel Pacilio and *without prejudice* as to the remaining Defendants, Chief Justice Rabner, Nadler, and Judge Grant.  Plaintiff shall have thirty days to file an amended complaint as to Defendants Chief Justice Rabner, Nadler, and Judge Grant to cure the deficiencies noted above.

Accordingly, it is on this 6th day of April, 2015,

**ORDERED** that Plaintiff's claims against Defendants Judge Sogluizzo and Daniel Pacilio are dismissed *with prejudice*; and it is further

**ORDERED** that Plaintiff's claims against the remaining Defendants are dismissed *without prejudice*; and it is further

**ORDERED** that this Order supersedes the Court's March 31, 2015 Order on this motion, (D.E. No. 24); and it is further

**ORDERED** that Plaintiff's time to appeal shall run from the date of entry of this Order.

*/s Esther Salas*_____
**Esther Salas, U.S.D.J.**